

**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## IN THE MATTER OF THE ESTATE OF
## JOSE AGUON PANGELINAN,
Deceased.

Supreme Court Case No. CVA25-007
Superior Court Case No. PR0004-24

## OPINION

## Cite as: 2026 Guam 5

Appeal from the Superior Court of Guam
Argued and submitted on October 27, 2025
Hagåtña, Guam

Appearing for Petitioner-Appellant:
Gregory P. Schacher, *pro se*
327-535 Ch. Pale RH, Ste. 116
Yigo, GU 96929

Appearing for Cross-Petitioner-Appellee
Family Finance Company, Inc.:
Oliver Weston Bordallo, *Esq.*
502 Agana Bay Condominium
182 Trankilo St.
Tamuning, GU 96913



**E-Received**
7/15/2026 3:20:49 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.[1]

**MARAMAN, J.:**

[1]     *Pro se* Appellant Gregory P. Schacher appeals the probate court's decision and order: (1) denying his petition for letters testamentary and for appointment as executor of the Estate of Jose Aguon Pangelinan ("the Estate"), (2) finding he engaged in the unauthorized practice of law, (3) finding he was incompetent due to improvidence or want of understanding, and (4) appointing Attorney Oliver Weston Bordallo—counsel for the Estate's creditor—as administrator.

[2]     The probate court abused its discretion by applying the wrong legal standard, requiring Schacher to obtain legal counsel before submitting his petition, even though he was not legally required to do so.

[3]     We reverse the probate court's decision and order and remand with instructions to appoint Schacher as executor.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[4]     Pangelinan took out a loan from Family Finance Company, Inc. ("FFC") in 2004 and consolidated it in 2011.  In 2019, FFC sued Pangelinan and obtained a default judgment of $258,550.78.

[5]     Pangelinan executed a will, appointing his nephew, Schacher, as his executor and naming eight beneficiaries, including Schacher.  The Estate includes at least three lots of real property, two of which—5309 and 5312—are ancestral properties that were returned to Pangelinan as part of the Guam Ancestral Lands Act of 1999, codified at 21 GCA ch. 80.  Between 1997 and 2021, Pangelinan allegedly recorded transfers of portions of or entire lots to at least seven individuals

---

[1] The signatures in this opinion reflect the titles of the Justices at the time this matter was argued and submitted.

through deeds of gift, warranty deeds, sales contracts, and land sale agreements. Pangelinan may have terminated at least one of these transfers. Record on Appeal ("RA"), tab 13 (Decl. Creditor FFC's Couns., May 20, 2024), Ex. 5 (Notice of Term'n Contract, Dec. 11, 2013). On March 3, 2021, Pangelinan executed a notarized deed of gift conveying lots 5309, 5312, and 5316 to Schacher. Pangelinan died testate on January 15, 2022. The deed of gift from Pangelinan to Schacher was recorded on July 7, 2022, six months after Pangelinan's death and after several other deeds had been recorded for the same property.

[6]     Schacher filed a petition to admit Pangelinan's will to probate and to be appointed executor in accordance with the will. Three named beneficiaries in Pangelinan's will signed notarized appearance and consent forms in support of Schacher's appointment as executor of the Estate. The four other named beneficiaries did not sign consent forms for Schacher's appointment.

[7]     On behalf of FFC, Attorney Bordallo filed an objection to Schacher's petition. FFC did not contest the will. Instead, FFC objected to Schacher as executor, arguing that Schacher (1) had a history of unauthorized practice of law, (2) was allegedly involved in Pangelinan's "colorful history of shady dealings," and (3) had a conflict of interest because he has an adverse claim against the Estate. *See generally* RA, tab 14 (Creditor FFC's Objs. Pet. Probate Will & for Letters, May 20, 2024); RA, tab 15 at 10 (Mem. P. & A. Supp. Opp'n Pet. Will, May 20, 2024). As for FFC's second argument, FFC claimed this because (a) Schacher was a co-defendant alongside Pangelinan in Superior Court Case No. CV0207-14 for terminating a contract of sale (dismissed with prejudice), (b) "strong evidence" that Schacher was committing fraud as Schacher recorded a deed of gift from Pangelinan to himself six months after Pangelinan's death, and (c) Schacher

offered an inaccurate estimated estate value[2] in his petition.  RA, tab 15 at 3 (Mem. P. & A. Supp. Opp'n Pet. Will).

**[8]** Attorney Bordallo argued that Schacher could not serve as executor without legal representation because a quiet-title action would be necessary and because Schacher had a personal adverse claim against the Estate.  *Id.* at 10; Tr. at 8 (Hr'g on Pet., Dec. 3, 2024).  Schacher argued to the probate court that "Mr. Bordallo has a bill to collect from the estate and . . . he's jumping the gun on this and aspires to become the administrator."  Tr. at 5 (Hr'g on Pet.).

**[9]** In an initial order, the probate court found that Schacher "effectively engaged in the unauthorized practice of law by presenting pleadings on behalf of others despite not being admitted to practice law in Guam."  RA, tab 16 at 1 (Order, May 20, 2024).  Specifically, the probate court determined that because there were other beneficiaries, Schacher needed an attorney to submit a petition for probate of the will and for letters testamentary, and to serve as executor.

**[10]** Schacher struggled to comply with the probate court's initial order because of the lack of attorneys on Guam.  The probate court recognized that it is difficult to find legal representation on Guam, explaining, "It's not a secret that there's a huge shortage of attorneys on Guam.  There are just simply not enough."  Tr. at 4 (Hr'g on Pet.).

**[11]** Schacher moved for reconsideration, arguing "that the presence of other beneficiaries does not negate my right to self-representation, especially as I am the sole petitioner named in the petition."  RA, tab 27 at 2 (Mot. Rescind Order Req'g Couns. & Recons. Approving Pet., Dec. 3, 2024).  Schacher also argued, "At no point did I intend or attempt to represent others or solicit

---

[2] Attorney Bordallo argued that it was too soon to provide an estimate because "upstream" probate proceedings are still ongoing in Superior Court Case Nos. PR0058-04, PR0009-16, and PR0175-19.  *See* RA, tab 15 at 2, 4, 7–8 (Mem. P. & A. Supp. Opp'n Pet. Will, May 20, 2024).

legal services or engage in the unauthorized practice of law. I submitted pleadings only on my own behalf as allowed by law." *Id.*

[12]    After Schacher "failed to comply with the Court's order to retain counsel within ninety (90) days to continue his petition," the probate court found him incompetent "to serve as executor by reason of either improvidence or want of understanding," focusing on the fact that he is not an attorney and did not hire one. RA, tab 29 at 4 (Dec. & Order, Mar. 6, 2025). The probate court granted Attorney Bordallo's petition for letters of administration and appointed him, an attorney for the Estate's creditor FFC, to serve as the Estate's personal representative. *Id.*

[13]    Schacher timely filed a notice of appeal in which he requested "that this Court issue an immediate temporary stay of the Appointment of the Personal Representative, Oliver Weston Bordallo, pending a full hearing on this request." RA, tab 31 at 2 (Notice of Appeal, Apr. 1, 2025). We excused Schacher's noncompliance with the Guam Rules of Appellate Procedure in consideration of his *pro se* status. No response was filed to Schacher's request for relief. We stayed the probate court's decision and order finding Schacher incompetent and appointing Attorney Bordallo as administrator of the Estate.

[14]    Attorney Bordallo submitted an entry of appearance as appellee.

## II.  JURISDICTION

[15]    This court has jurisdiction over probate court orders granting letters of administration with the will annexed. 7 GCA § 25102(k) (2005); 15 GCA § 3433 (2005).

## III.  STANDARD OF REVIEW

[16]    "We review questions of law *de novo*." *Ests. of Torres v. Est. of Cruz ex rel. Guzman*, 2011 Guam 4 ¶ 17 (citing *Nissan Motor Corp. in Guam v. Sea Star Grp. Inc.*, 2002 Guam 5 ¶ 10).

"The interpretation of a statute is a legal question subject to *de novo* review." *Lujan v. Est. of Rosario*, 2016 Guam 28 ¶ 15 (quoting *Guerrero v. Santo Thomas*, 2010 Guam 11 ¶ 8).

[17] We review for abuse of discretion the probate court's refusal to grant letters testamentary to the executor named in the will. *See Sapp. v. Rogers (Est. of Sapp)*, 248 Cal. Rptr. 3d 244, 258 (Ct. App. 2019). The probate court "abuses its discretion when its decision is based on clearly erroneous factual findings or an incorrect legal standard." *See Lujan*, 2016 Guam 28 ¶ 14 (quoting *Agana Beach Condo. Homeowners' Ass'n v. Untalan*, 2015 Guam 35 ¶ 12). We will not reverse the probate court's findings of fact for abuse of discretion unless they are clearly erroneous. *See Gov't of Guam v. O'Keefe ex rel. Heirs of Torres Est.*, 2018 Guam 4 ¶ 13; *In re Leon Guerrero*, 2005 Guam 1 ¶ 15.

[18] "[W]e give deference to a *pro se* party's litigation efforts." *Linsangan v. Gov't of Guam*, 2020 Guam 27 ¶ 34 (per curiam) (collecting cases); *accord Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Schoene v. Spirit Airlines, Inc.*, 726 F. Supp. 3d 1248, 1255 (D. Or. 2024) ("A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt." (citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010))). "We also 'provide lenient treatment' of those efforts and give the parties 'every fair opportunity to present their case[].'" *Allen v. Richardson*, 2020 Guam 13 ¶ 8 (quoting *Caspino v. Caspino*, DCA Civ. No. 87-00065A, S.C. Domestic No. 1445-86, 1988 WL 242619, at *2 (D. Guam App. Div. June 7, 1988)).

## IV. ANALYSIS

[19] "Because the Guam Legislature enacted a probate code substantially similar to the California Probate Code in 1953, we look to California case law for interpretation." *Zahnen v. Limtiaco*, 2008 Guam 5 ¶ 17 (citing *People v. Angoco*, 2007 Guam 1 ¶ 52 n.4). "A testator's

selection of an executor should not be annulled except on a clear showing that the best interests of the estate require it." *Morse v. Buchman (In re Buchman's Est.)*, 267 P.2d 73, 80 (Cal. Dist. Ct. App. 1954) (citing *Sherman v. Cohn (In re Sherman's Est.)*, 56 P.2d 230, 236 (Cal. 1936) (in bank)). There is no requirement that a person have a law license, or retain legal counsel, to submit a will to probate or be appointed executor of an estate. *See* 15 GCA § 1507(a) (2005) ("A petition for the probate of a will and for the grant of letters testamentary . . . must be in writing, signed by the petitioner *or* the petitioner's counsel . . . ." (emphasis added)); *see also* 15 GCA §§ 1701, 1725, 1811 (2005). The probate court has no discretion to find a person incompetent solely because they are not an attorney or do not have one. *See* 15 GCA § 1701(c)(5); *see also Backer v. Backer (Est. of Backer)*, 211 Cal. Rptr. 163, 165 (Ct. App. 1985); *In re Bauquier's Est.*, 26 P. 178, 179–80 (Cal. 1891) (in bank), *aff'd*, 26 P. 532 (Cal. 1891) (per curiam).

## A. The Probate Court Abused Its Discretion When It Found Schacher Incompetent for Not Having Legal Counsel or a Law License

[20]     Petitioners are presumed competent to be executors unless proven otherwise, *In re Olcese's Est.*, 291 P. 193, 195–96 (Cal. 1930) (in bank) (per curiam). Attorney Bordallo failed to meet his burden of proving Schacher's incompetency, *see Farnham v. Gordon (In re Est. of Gordon)*, 75 P. 672, 674 (Cal. 1904). Courts have interpreted "improvidence" and "want of understanding" narrowly. *See* 15 GCA § 1701(c)(5); *Davis v. Lyman (In re Davis' Est.)*, 131 P.2d 557, 559 (Cal. Dist. Ct. App. 1942) (interpreting "improvidence"); *In re Flood's Will*, 140 N.E. 936, 937 (N.Y. 1923) (same); *Olcese's Est.*, 291 P. at 196 (collecting cases) (interpreting "want of understanding"); *Bauquier's Est.*, 26 P. at 180 (interpreting "want of understanding"); *Berry v. Hamilton*, 51 Ky. 191, 193 (12 B. Mon. 191) (1851) (interpreting "want of understanding"). The probate court found that, because Schacher lacked a law license, he was not "competent to serve as executor by reason of either [(1)] improvidence or [(2)] want of understanding." RA, tab 29 at

4 (Dec. & Order). "[T]here is a strong presumption of competency operating in favor of a petitioner for letters of administration, and the burden of proof rests upon one claiming otherwise." *Olcese's Est.*, 291 P. at 195–96. "Every person is presumed to be sane, and in the full possession of ordinary mental faculties. Likewise it is presumed that he possesses a fair character for truth, honesty, and integrity." *Est. of Gordon*, 75 P. at 674. "Where such presumption exists, it is neither necessary to allege matters in aid of such presumption nor does the law cast upon the petitioner the burden of proving them." *Id.* As in *Estate of Gordon*, here, "all that the petitioner was required to show, in order to establish his right to letters, was that he was an heir at law. . . . As to the existence of any other matters which might disqualify him, the law raised a presumption in his favor of their nonexistence." *See id.* Moreover, "any person contesting [an application for general grant of letters] on the ground of the incompetency of the applicant must allege his grounds of incompetency, and necessarily the burden of proof is upon him to establish his allegations in that regard." *Id.* (citation omitted). As discussed below, Attorney Bordallo failed to meet his burden of proving incompetency based on either "improvidence" or "want of understanding."[3] *See id.*; 15 GCA § 1701(c)(5).

### 1. There is no substantial evidence of "improvidence" in the record

[21] It appears only one California case interprets the meaning of "improvidence," finding that "[k]eeping the money of his ward in a little box for over twenty years with no earnings and no accounting would in [that court's] judgment, in the absence of justification or excuse, support a finding of improvidence." *Davis' Est.*, 131 P.2d at 559. The Court of Appeals of New York explained that improvidence meant more than unsuccessfully managing one's private estate or not

---

[3] The probate court did not address Attorney Bordallo's allegations of Schacher's "want of integrity," and that is not the basis on which the probate court made its decision and order. *See* RA, tab 29 at 4 (Dec. & Order, Mar. 6, 2025); 15 GCA § 1701(c)(5) (2005).

remembering making large payments, but that it "refers to habits of mind and conduct which become a part of the man, and render him generally, and under all ordinary circumstances, unfit for the trust or employment in question." *Flood's Will*, 140 N.E. at 937 (quoting *Emerson v. Bowers*, 14 N.Y. 449, 454 (1856)).

[22]     The probate court provided no factual basis or analysis for its finding of improvidence, *see* RA, tab 29 at 4 (Dec. & Order), and we look to the entire record for substantial evidence of such improvidence, *see Lujan v. Tebo*, 2024 Guam 15 ¶ 17 (per curiam).  Attorney Bordallo alleges improvidence, arguing that Schacher was involved in Pangelinan's "colorful history of shady dealings" and making several claims of Schacher's bad faith.  RA, tab 15 at 1 (Mem. P. & A. Supp. Opp'n Pet. Will).  Attorney Bordallo implies that Schacher intentionally tried to deceive the probate court when he submitted his petition for letters testamentary.  Appellee's Br. at 18 (Aug. 4, 2025) ("Schacher made no effort to address or explain the materially false representation in his petition that: 'The decedent is survived by: No . . . issue.'").  While Attorney Bordallo argues that Schacher did not include or notify Pangelinan's "numerous nieces and nephews," RA, tab 14 ¶ 16 (Creditor FFC's Objs. Pet. Probate Will & for Letters), we attribute this omission to the legalese "issue" rather than to bad faith.  There is no evidence in the record to support Attorney Bordallo's claims of Schacher's bad faith, and the probate court abused its discretion when it found Schacher incompetent for "improvidence."  *See* 15 GCA § 1701(c)(5).

### 2.  There is no substantial evidence of "want of understanding" in the record

[23]     The California Supreme Court interpreted the meaning of "want of understanding":

> The expression 'want of understanding' means that petitioner must have *a want of common intelligence amounting to a defect in intellect*.  For example, it has been held that failure to understand the law applicable to administration, inability to read, write, or speak the English language, old age, unfamiliarity with large business affairs—*none of these are sufficient to disqualify one otherwise entitled to letters*.

*Olcese's Est.*, 291 P. at 196 (emphasis added) (citation omitted) (collecting cases). The same court remarked, regarding the lack of any of these skills, that: "It is true, they may render it difficult for [an executor] to perform some of her duties properly, yet they do not render it impossible." *Bauquier's Est*., 26 P. at 180. Since an understanding of the law applicable to administration is not required to serve as an executor, a law license is not required either. *See Olcese's Est.*, 291 P. at 196.

[24]     An earlier case in Kentucky explains that "generally speaking, all persons who are capable of making wills and some others beside, are capable of being made executors" and that "poverty or insolvency is no objection." *Berry*, 51 Ky. at 193 (quoting *Williams on Executors*, vol. i at 112, 119). The court further explained that "idiots and lunatics are incapable of being executors or administrators; for these disabilities render them not only incapable of executing the trust reposed in them, but also by their insanity and want of understanding, they are incapable of determining whether they will take upon them the trust or not." *Id.* (quoting *Williams on Executors*, vol. i at 121).

[25]     Based on the plain language of 15 GCA § 1701(c)(5) and caselaw interpreting the definition, a person must be severely incapacitated or disabled to be deemed to have a "want of understanding."

[26]     Attorney Bordallo made several allegations of incompetence in his initial objections to Schacher's appointment, including that Schacher was *pro se*. *See* RA, tab 14 ¶¶ 15–17 (Creditor FFC's Objs. Pet. Probate Will & for Letters). The probate court never found a "defect in intellect." Instead, it found that Schacher was not a lawyer and did not hire one, and incorrectly concluded this meant Schacher was incompetent. RA, tab 29 at 1–4 (Dec. & Order).

[27]    Despite the Supreme Court of California's recognition that the probate court's "opportunity to observe the appearance and demeanor of appellant on the stand and his manner of answering questions . . . should be given great weight," the court clarified that it did "not feel that a finding of want of understanding, implying as it does a defect in intellect, should be predicated upon that fact alone." *Olcese's Est.*, 291 P. at 196 (citation omitted).  The court reasoned that "[s]uch a rule would be exceedingly dangerous to litigants and would, in effect, deprive [an appellate] court of its power of review in such cases." *Id.*

[28]    Nothing appears in the record to suggest Schacher suffers from "a want of common intelligence amounting to a defect in intellect." *See id.*  Schacher submitted the petition for letters testamentary; defended claims against Attorney Bordallo; filed several pleadings; and initiated, briefed, and argued this appeal.  Schacher's cogent oral arguments and pleadings before the probate court and on appeal do not suggest a "want of common intelligence amounting to a defect in intellect." *See id.*  Attorney Bordallo did not meet his burden of establishing the facts necessary for the probate court to find Schacher incompetent under 15 GCA § 1701(c)(5).  *See Est. of Gordon*, 75 P. at 674.  Thus, the probate court abused its discretion when it found Schacher incompetent for "want of understanding" for not being a lawyer and for not finding one.  *See Bauquier's Est.*, 26 P. at 180.

## B. Neither a Law License nor Legal Counsel Is Required to Submit a Petition for Letters Testamentary and Appointment as Executor to Probate

[29]    The central issue is whether a law license is required to serve as an executor when there are multiple named beneficiaries or at least one creditor, and the named executor has a potential adverse claim against the Estate.  *See* Appellee's Br. at 3–4.

[30]    Schacher argues that "representing an estate does not automatically constitute unauthorized practice of law, especially where the executor is also a beneficiary and has no adverse interest."

Appellant's Am. Br. at 12 (June 30, 2025).[4]  Attorney Bordallo argues that "allowing fiduciaries, including executors and administrators, to adjudicate probate claims and issues on behalf of a decedent's estate, without competent representation, may prejudice the rights of other parties interested in the estate."  Appellee's Br. at 10.  Attorney Bordallo recognizes that California caselaw is persuasive, yet he cites cases from other jurisdictions without explaining why we should consider them more persuasive.  *See id.* at 10–12.

[31]     "[P]ro. per. representation by a personal representative is improper if the representation in effect permits a non-lawyer to practice law."  *Pepper v. Superior Court (Brentwood Country Club)*, 142 Cal. Rptr. 759, 764 (Ct. App. 1977) (citing *City of Downey v. Johnson*, 69 Cal. Rptr. 830, 836 (Ct. App. 1968)).  Moreover, "[a] person who is unlicensed to practice law and who represents a decedent's estate cannot appear in propria persona on behalf of the estate in matters outside the probate proceedings."  *Hansen v. Hansen*, 7 Cal. Rptr. 3d 688, 691 (Ct. App. 2003); *see also Johnson*, 69 Cal. Rptr. at 833–34 (finding no authority preventing an executor without a law license from appearing unrepresented on behalf of an estate in probate proceedings); *see generally* Michael Hatfield, *Pro Se Executors—Unauthorized Practice of Law, or Not?*, 59 Baylor L. Rev. 329 (2007) (using jurisdictional case studies to argue "why under Texas law an individual named as executor in a will has the right to offer the will for probate and otherwise appear in a probate court without hiring a lawyer").  However, California appellate courts suggest that executors may appear *pro se* within probate proceedings "affecting rights personal to [their] office as executor."  *Johnson*, 69 Cal. Rptr. at 834.

---

[4] In Schacher's opening brief, two nonexistent citations may be attributed to generative artificial intelligence use.  *See* Appellant's Am. Br. at 15 (June 30, 2025).  We do not find sanctions warranted, considering Schacher's *pro se* status and this being his initial appearance before the court.  However, we reiterate that "[i]t is the responsibility of attorneys, judges, and self-represented litigants to ensure the integrity of their final submissions."  *Re: Adoption of the Judiciary of Guam Policy on Artificial Intelligence*, ADM25-001, Ex. A (Admin. Order No. ADM25-001, Apr. 30, 2025).

**[32]** Attorney Bordallo is incorrect that "the 'within vs. outside probate court' delineation in *Johnson* and *Hansen* has been disapproved" by *Peralta v. Sanchez (Estate of Sanchez)*, 313 Cal. Rptr. 3d 109 (Ct. App. 2023), *reh'g denied* (2023), *review denied* (2023). Appellee's Br. at 14. Rather, the *Estate of Sanchez* court clarified that even when proceeding in probate court, there is a "requirement that the personal representative retain counsel if proceeding against third parties for the benefit of the estate's beneficiaries." 313 Cal. Rptr. 3d at 120. The court explained that "the primary concern raised by a personal representative appearing in propria persona is that they are representing the interests of others and not just themselves." *Id.* at 118; *accord Donkin v. Donkin*, 260 Cal. Rptr. 3d 844, 845–46 (Ct. App. 2020) (addressing this concern).

**[33]** Attorney Bordallo does not distinguish *Estate of Sanchez* from the issue presented by this appeal: whether Schacher committed the unauthorized practice of law by submitting a petition for letters testamentary. In *Estate of Sanchez*, the executor had been appointed, granted letters, and then filed a complaint in propria persona against third parties in the probate court "for the benefit of the estate's beneficiaries, including herself." 313 Cal. Rptr. 3d at 119. This is unlike Schacher's situation, in which he filed a petition for his own appointment as executor, which is his statutory right, *see* 15 GCA §§ 1701, 1725(a)(1), 1805 (2005), and was denied because he could not find counsel at this preliminary stage. Unlike in *Estate of Sanchez*, where there was an unauthorized practice of law violation due to submissions purporting to represent others' interests, here the probate court found a violation before any violation occurred. *Estate of Sanchez* holds that executors cannot sue third parties on behalf of other beneficiaries without retaining counsel. *See* 313 Cal. Rptr. 3d at 120. It does not stand for the sweeping proposition that executors cannot file documents in probate court without an attorney.

**[34]**     Attorney Bordallo also does not distinguish *Hansen* and *Johnson* from the issue of whether Schacher committed the unauthorized practice of law by submitting a petition for letters testamentary.   Both cases involved already-appointed representatives attempting to litigate on behalf of beneficiaries in nonprobate proceedings.   By contrast, Schacher appeals the probate court's denial of his statutory right to be named executor because he is not an attorney and cannot hire one.   In *Johnson*, there were multiple devisees, heirs, and creditors, and the decedent's son proceeded *pro se* to represent his mother's estate in probate proceedings.   69 Cal. Rptr. at 832–33.   There, a condemnation proceeding removed the case from probate, and the decedent's son had to retain an attorney.   *Id.* at 834.   In *Hansen*, a purported personal representative filed a separate civil action on behalf of the estate *in propria persona*.   7 Cal. Rptr. 3d at 689–90.   *Hansen* stated that the estate's personal representative "may have been able to present the claims asserted in the Complaint in a petition in the probate proceedings," and that *Johnson* "suggests (but does not hold) a nonlawyer representative of a decedent's estate may appear in propria persona on behalf of the estate in matters within the probate proceedings."   *Id.* at 691 (citing *Johnson*, 69 Cal. Rptr. at 834).

**[35]**     A majority of federal courts recognize a *pro se* executor's right to sue in federal court in limited circumstances.   *Iriele v. Griffin*, 65 F.4th 1280, 1284 (11th Cir. 2023) (collecting cases).   Because "a federal court has no jurisdiction to probate a will or administer an estate," *Markham v. Allen*, 326 U.S. 490, 494 (1946), such cases are outside probate proceedings.   Because at least six federal circuits allow *pro se* executors to bring suits outside probate court, it is not true that an unlicensed person cannot serve as executor of an estate.   *See Iriele*, 65 F.4th at 1284.

**[36]**     If there are no other beneficiaries or creditors, the law favors a *pro se* executor acting on behalf of the estate outside probate court: "[f]or [i]t is only a legal fiction that assigns the sole beneficiary's claims to a paper entity – the estate – rather than the beneficiary himself."   *Clark v.*

*Santander Bank, N.A.*, 122 F.4th 56, 59 (2d Cir. 2024) (second alteration in original) (quoting *Guest v. Hansen*, 603 F.3d 15, 21 (2d Cir. 2010)) (internal quotation marks omitted). However, when there are other beneficiaries or creditors, to determine whether an executor may proceed *pro se*, we consider whether: (1) the proceeding is within the probate court's jurisdiction, (2) the proceeding involves matters personal to the executor's office (e.g., appointment, fees), and (3) the executor is acting for their own benefit and in their own capacity. *See Est. of Sanchez*, 313 Cal. Rptr. 3d at 119–20. If the answer to all three elements is yes, the executor may proceed *pro se*, provided they are also competent and comply with all other provisions of the probate code.

[37] There is a significant difference between (1) submitting a will to probate and (2) proceeding against third parties in probate or other actions on behalf of an estate when not an attorney. The probate court skipped Schacher's eligibility for the former, assuming that the latter would arise. Because there is no evidence of unauthorized practice of law in this record, we reverse.[5]

## C. Schacher Will Need Legal Counsel to Bring Claims for the Benefit of Other Beneficiaries

[38] The Estate may need to pursue a quiet-title action against multiple third parties, including Schacher. If Schacher were the sole beneficiary and there were no creditors, he could pursue the quiet-title action.[6] However, because there are other beneficiaries and at least one creditor, Schacher will need legal counsel for any quiet-title action, as it does not involve matters personal to the executor's office and would require the executor to act "for the benefit of the estate's

---

[5] In Guam, the illegal practice of law requires the representation of another or advertising such representation. 7 GCA § 9A215(b) (2005). Performing legal services or appearing in court for oneself is expressly permitted. *Id.* § 9A215(c)(1). Schacher submitted his own petition for letters testamentary and appeared for himself for his appointment as executor—which he has the right to do.

[6] The probate court has jurisdiction over third-party claims when the third party is in privity with the estate. *Zahnen v. Limtiaco*, 2008 Guam 5 ¶ 20. An executor claiming part of the estate has been held to be in privity with the estate. *Id.* (citing *Cent. Bank v. Superior Court*, 285 P.2d 906, 909 (Cal. 1955) (in bank) (collecting cases)).

beneficiaries." *Est. of Sanchez*, 313 Cal. Rptr. 3d at 119. Eventually, Schacher must retain counsel for the quiet-title action, or disqualification as executor would be proper if he took this action without counsel. However, the occasion to disqualify Schacher has not arisen, as there is no evidence of any unauthorized practice of law violation in this record.

## V. CONCLUSION

[39] Because Schacher did not need legal counsel to submit his petition for letters testamentary and appointment as executor, and there is no substantial evidence of "improvidence" or "want of understanding" in this record, we **REVERSE**. We **REMAND** with instructions to the probate court to appoint Schacher as executor of the Estate and for further proceedings not inconsistent with this opinion.


| | |
|---|---|
| /s/ | /s/ |
| F. PHILIP CARBULLIDO | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |


/s/
ROBERT J. TORRES
Chief Justice